USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/14/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARWIN COLUMNA,

                Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER GENNER GOMEZ, and DETECTIVE PEDRO ROMERO,

                Defendants.

1:19-cv-3801 (MKV)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Darwin Columna, proceeding *pro se*, brings this action for alleged violations of his civil rights in connection with an arrest and prosecution for drug possession. Defendants the City of New York (the "City"), Officer Genner Gomez, and Detective Pedro Romero have moved for summary judgment on all claims except the false arrest claim against Officer Gomez. [ECF No. 95]. For the reasons stated herein, the Court grants in part Defendants' motion for summary judgment.

## BACKGROUND[1]

On April 26, 2016, Plaintiff was approached by Officer Gomez and Detective Romero. 56.1 ¶¶ 1-2. As the officers arrived, an acquaintance standing with Plaintiff "pulled out a small bag" containing Phencyclidine (PCP) "and threw it on the ground." 56.1 ¶¶ 3-4. Plaintiff's acquaintance stated that the bag was his, and Detective Romero "approached, searched and arrested [him]." 56.1 ¶ 6. Officer Gomez then turned his attention to Plaintiff, asked him for his identification, and Plaintiff reached into his pocket to retrieve it. 56.1 ¶¶ 7-9. After Officer

---

[1] The Court cites to Plaintiff's Rule 56.1 counterstatement [ECF No. 103] ("56.1") throughout because it contains the Parties' assertions and responses.

1

Gomez searched Plaintiff and found nothing on his person, a third officer arrived at the scene. 56.1 ¶¶ 9-12. That officer held Plaintiff while Officer Gomez reached down to pick up the bag. 56.1 ¶ 13. Plaintiff's acquaintance then said "that's mine," and Officer Gomez said "that's not his." 56.1 ¶ 12. Officer Gomez looked at Detective Romero who "simply nodded." 56.1 ¶ 12. Officer Gomez then "arrested and handcuffed [P]laintiff for possession of the bag of PCP." 56.1 ¶ 13.

The third officer then "drove [P]laintiff to the precinct stationhouse in his car." 56.1 ¶ 14. While en route, Plaintiff began using his phone, causing the officer to get out and grab Plaintiff's pinky "while trying to get the phone." 56.1 ¶ 15.

Once at the precinct, Plaintiff was placed in a holding cell. 56.1 ¶ 16. "An unidentified officer" then escorted Plaintiff for fingerprinting and asked him to remove his rosary. 56.1 ¶ 17. He was also told that he may be strip searched. 56.1 ¶ 18. "Plaintiff refused to take off his rosary necklace and to consent to a cavity search." 56.1 ¶ 19. After some back and forth with the officers at the precinct, the sergeant ordered that Plaintiff's rosary be cut off. 56.1 ¶¶ 22-25. After a further struggle, Plaintiff was tased. 56.1 ¶¶ 28-29.

Plaintiff was arraigned the next day on the drug charges and was released. 56.1 ¶¶ 35-36. On October 19, 2017, the criminal case was dismissed on New York state speedy trial grounds. 56.1 ¶ 39.

Plaintiff commenced this case on April 26, 2019, suing the City of New York, Officer Gomez, and Detective Romero. 56.1 ¶ 41. On September 16, 2019, Plaintiff filed an Amended Complaint [ECF No. 19] that added as defendants Officer Josue Perez, Detective Pedro Roche, and a still unidentified "Officer John Doe 2." 56.1 ¶ 42. On August 25, 2020 the Court issued

an Opinion dismissing then-defendants Josue Perez and Pedro Roche on statute of limitations grounds. [ECF No. 65] (the "August 25 Opinion").

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating that no genuine factual dispute exists and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-49. It may satisfy this burden "by submitting evidence that negates an essential element of the non-moving party's claim" or "by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)). If the movant satisfies its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson*, 477 U.S. at 249).

Local Civil Rule 56.1 requires a party moving for summary judgment to annex to its motion a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The party opposing the motion must then respond to the factual assertions of the movant. Local

Civ. R. 56.1(b). If the party opposing summary judgment fails to respond, the factual assertions may be deemed admitted. Local Civ. R. 56.1(c); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). *Pro se* litigants are not excused from this rule. *Parker v. Fantasia*, 425 F. Supp. 3d 171, 176 n.2 (S.D.N.Y. 2019) (quoting *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014)).

## DISCUSSION

As a threshold matter, the Court addresses the Defendants' request to disregard Plaintiff's Rule 56.1 counterstatement and deem abandoned certain claims not addressed in his opposition. *See* Reply at 1-3. On May 27, 2021, the Court entered an order setting a briefing schedule for any motion for summary judgment. [ECF No. 94]. Defendants timely filed their motion [ECF No. 95] and supporting papers, including a memorandum of law in support [ECF No. 98] ("Mem."). Plaintiff then asked that the Court extend his time to respond to the motion, which the Court did. [ECF Nos. 100-102]. A week after the extended deadline had passed, Plaintiff submitted a Rule 56.1 counterstatement [ECF No. 103], and memorandum in opposition [ECF No. 104] ("Opp."). Defendants then filed a reply in further support of their motion. [ECF No. 108] ("Reply").

Plaintiff writes that he "lack[s] resources" and "is unable to articulate specific legal arguments against all those raised by Defendants." Opp. at 1. Plaintiff implores "the Court [to] conduct its own assessment of those arguments" and "'in its discretion opt to conduct an assiduous review of the record.'" Opp. at 1 (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).

Defendants believe that the deficiencies in Plaintiff's submissions are fatal to his case. On reply, Defendants argue that the failure to provide citations to record evidence in his Rule 56.1 counterstatement mean the Court must disregard it. Reply at 1. Defendants further contend

4

that Plaintiff has abandoned his excessive force, free exercise, destruction of property, and *Monell* claims by failing to address them directly in his opposition. Reply at 2-3.

The Court is highly sympathetic to *pro se* plaintiffs, who may find themselves with no recourse but to seek relief—alone—before the Southern District. Plaintiffs who represent themselves may do so for any variety of reasons, including, for example, a "lack [of] resources." Opp. at 1. Indeed, this Court is "ordinarily obligated to afford a special solicitude to *pro se* litigants."[2] *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

The Court will not disregard Plaintiff's statements in his Rule 56.1 counterstatement as Defendants request. "[W]hile a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record.'" *Holtz*, 258 F.3d at 73 (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)). However, where no citation in the record would support Plaintiff's contentions, and where the record otherwise does not raise a triable issue, the Court cannot deny summary judgment simply because Plaintiff asks the Court to do so. *See id.* at 73-74; *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (a "*pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment.").

Similarly, the Court will not deem Plaintiff's claims abandoned as Defendants urge. Rather, the Court construes the *pro se* Plaintiff's pleadings to raise the strongest arguments

---

[2] At various times during this case Plaintiff has had the limited assistance of counsel. Goodwin Proctor LLP represented Plaintiff on a limited, *pro bono* basis for the purpose of fact discovery depositions. [ECF Nos. 68, 76, 94]. As Defendants point out, Plaintiff also availed himself of the New York Legal Assistance Group's Legal Clinic for *Pro Se* Litigants to assist him in drafting his opposition. Opp. at 1 n.2. That clinic also assisted in the drafting of Plaintiff's "statement of facts" annexed to his Amended Complaint. *See* Statement of Facts at 1 n.1. The limited assistance Plaintiff has received in this case does not negate the fact that Plaintiff is proceeding *pro se*. *See* ECF No. 94 (noting that Plaintiff's limited representation by Goodwin Proctor LLP had concluded, and he was therefore proceeding *pro se*).

5

possible. *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). A determination that an opposing party has waived or abandoned a claim is discretionary and the Court opts not to exercise that discretion in this case. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts *may* deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (emphasis added).

Following a detailed review of the record in this case, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's federal claims under 42 U.S.C. § 1983 for excessive force, destruction of property, and *Monell*, and his free exercise claims, in addition to Plaintiff's "other pendent state law claims." Am. Compl. at 2. Defendants are not entitled to summary judgment on Plaintiff's federal malicious prosecution claim, the false arrest claim against Detective Romero, or Plaintiff's first amendment retaliation claim.

**I.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL EXCESSIVE FORCE, FREE EXERCISE, DESTRUCTION OF PROPERTY, AND *MONELL* CLAIMS**

**A.  *Plaintiff's Claims of Excessive Force and Free Exercise Fail for Lack of Personal Involvement***

Plaintiff asserts broad violations of his right to free exercise of religion and his right to be free from excessive force against Detective Romero and Officer Gomez.

"It is well settled in this Circuit that the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Jones v. Permley*, 714 F. App'x 42, 46 (2d Cir. 2017) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). Personal involvement may be established by a showing of direct participation, namely "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation "such as ordering or helping others to do the unlawful acts."

6

*Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).  Generally, personal involvement is a question of fact, but summary judgment may be granted where no issue of material fact exists and the defendant is entitled to judgment as a matter of law.  *Burke*, 449 F.3d at 484.  The undisputed facts are that Detective Romero or Officer Gomez did not have personal involvement in the circumstances alleged in support of Plaintiff's excessive force or free exercise claims.

Plaintiff's excessive force claim arises from his post-arrest transport to the precinct.  56.1 ¶ 15 (the "serious injury to Plaintiff's finger" occurred "on route to the precinct stationhouse.").  Plaintiff admits that neither Officer Gomez nor Detective Romero drove Plaintiff to the precinct, and neither was the officer who "got out and grabbed [P]laintiff's pinky."  56.1 ¶¶ 14-15.  To the extent the Court construes Plaintiff's Amended Complaint to raise an excessive force claim based on him being tasered at the precinct for noncompliance with the officers orders, *see* 56.1 ¶¶ 28-29 (stating Sergeant Perez tasered Plaintiff), it is similarly undisputed that Officer Gomez and Detective Romero had no personal involvement in the tasering.  As such, Officer Gomez and Detective Romero lack the requisite personal involvement in any purported constitutional violation under Section 1983 with respect to Plaintiff's excessive force claim.

Similarly, Plaintiff's free exercise claim does not personally involve Officer Gomez or Detective Romero.  At the precinct, an unknown officer told Plaintiff to remove his rosary.  56.1 ¶ 17.  Plaintiff refused because it was "a religious expression and did not pose any threat."  56.1 ¶ 19.  Ultimately, that unknown officer was directed to "cut [P]laintiff's rosary necklace off."  56.1 ¶ 24.  Neither Officer Gomez nor Detective Romero gave that order or otherwise were involved.  *See* 56.1 ¶¶ 17-25.  As a result, they cannot be held liable under Section 1983 because they lack any personal involvement in the facts and circumstances on which Plaintiff bases his free exercise claim.

In sum, the record does not raise a triable issue of material fact that would preclude summary judgment at this stage, and Defendants Romero and Gomez are entitled to judgment as a matter of law. The Court therefore grants Defendants' motion for summary judgment with respect to Plaintiff's excessive force and free exercise claims.

### B.     *The Record is Devoid of Support for a Triable Monell Claim*

Under the Supreme Court's decision in *Monell v. Department of Social Service*, local governments and individuals in their official capacity may be held liable in Section 1983 actions when it can be shown that "the denial of a constitutional right [] was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019).

The Court construes Plaintiff's Amended Complaint to assert a *Monell* claim against the City of New York (which otherwise does not appear to be related to any other cause of action in this case). Plaintiff alleges no facts, and the record otherwise does not indicate, that any action by any individual Defendant was caused by a policy or practice of the City. Plaintiff does not point to the existence of any policy or custom, much less draw a cognizable nexus between any purported inadequacy and any constitutional violation.

A defendant may be entitled to summary judgment "by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017). Plaintiff contends in his 56.1 statement that there are "[g]rounds to support Plaintiff's Monell claims," which are "related to a broad policy, arbitrarily applied, of confiscating certain personal property from prisoners prior to incarceration." 56.1 ¶ 50. In that statement, he directs the Court to the depositions of Officer Gomez and Detective Romero. 56.1 ¶ 50. The Court has reviewed the portions of the depositions in the record [ECF No. 96-4] ("Gomez Dep. Tr.") [ECF

No. 96-5] ("Romero Dep. Tr.") and has not found anything that would indicate the actions taken were a result of an impermissible policy or custom.

The only reference to a custom in the record on this motion is that during processing at the precinct following arrest, the officers followed a procedure that prohibited detainees from "go[ing] into the cell with any string that you could use to hang [themselves]." And, the record reflects that Plaintiff was asked to remove his rosary. Gomez Dep. Tr. 151:5-21. "[A] challenged prison regulation is judged under a reasonableness test: a regulation that burdens a protected right passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks omitted). Plaintiff bears the burden of proving that the disputed procedure is unreasonable. *See Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir. 1995). It is manifestly obvious that preventing detainees from hanging themselves is a legitimate penological interest. Significantly, Plaintiff himself seems to acknowledge that the removal of his rosary may not have been a result of a policy, regulation, or custom at all. *See* 56.1 ¶ 20 (stating that the removal of his rosary was, in his view, "more [a result of] a power struggle over his refusal to cooperate with a strip and cavity search [than a] strict enforcement of any policy.").

At bottom, Plaintiff does not make out a colorable *Monell* claim. Defendants are therefore granted summary judgment on any *Monell* claim, to the extent that Plaintiff's Amended Complaint could be construed to raise one.

### C.   *Plaintiff's Property Claim Does Not Raise a Constitutional Violation*

The Court construes Plaintiff's Amended Complaint to assert a Fourteenth Amendment claim for destruction of property when his rosary necklace was cut. *See* Am. Compl. at 2. "[T]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a

9

meaningful post deprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). "Courts in this Circuit have consistently held that state law causes of action are adequate post-deprivation remedies in the context of § 1983 actions." *Liranzo v. City of New York*, 2012 U.S. Dist. LEXIS 178872, at *33 (S.D.N.Y. Dec. 11, 2012). The failure to pursue those remedies does not convert Plaintiff's property claim into a constitutional violation. *See Dove v. City of New York*, 2000 U.S. Dist. LEXIS 4053, 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000) ("Because New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion, [plaintiff's] § 1983 claim for the loss of his property is dismissed.") Accordingly, Defendants are entitled to summary judgment on Plaintiff's destruction of property claim.

**II.     PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY FAILURE TO COMPLY WITH THE STATE NOTICE OF CLAIM LAW AND ARE UNTIMELY**

Plaintiff's Amended Complaint alleges "pendent state law claims." Am. Compl. at 2. It is well settled that federal courts presiding over state law claims against municipalities must apply any applicable state law notice-of-claim provisions. *Johnson v. City of New York*, 2019 U.S. Dist. LEXIS 10867, at *34 (S.D.N.Y. Jan. 23, 2019). New York General Municipal Law provides that "[n]o action . . . shall be prosecuted or maintained against the city . . . or any employee . . . unless a notice of a claim shall have been made and served upon the city." N.Y. Gen Mun. Law ("GML") § 50-i(1). A plaintiff bringing tort claims against a municipality or its agent must plead "that (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). The notice must be served in compliance with New York General Municipal Law § 50-e, which requires that the "[t]he notice shall be served

on the public corporation against which the claim is made by delivering a copy thereof personally, or by registered or certified mail, to the person designated by law . . . , or to an attorney regularly engaged in representing such public corporation." GML § 50-e(3)(a). Notice of claim requirements are construed strictly by New York state courts and "[f]ailure to comply with [them] ordinarily requires dismissal." *Hardy*, 164 F.3d at 793 (citing *Murray LeRoy Cent. Sch. Dist.*, 67 N.Y.2d 775, 775, 500 N.Y.S.2d 643, 643, 491 N.E.2d 1100, 1100 (1986)).

As a threshold matter, Plaintiff's Amended Complaint is deficient because it does not plead, as required, that a notice of claim was served, that thirty days have elapsed since that service was made, and that the Defendants have neglected to satisfy the claim. *See Hardy*, 164 F.3d at 793; GML § 50-i. A notice of claim is a condition precedent to bringing personal injury actions against municipalities and their agents; failure to comply speaks to the subject matter jurisdiction of this Court to consider the state-law claims. *See id.*

While that failure to plead alone would be fatal to Plaintiff's case, the Court has nonetheless reviewed whether Plaintiff did in fact comply with the notice of claim requirements and concludes that he has not. Plaintiff attempted to serve his notice of claim on the Office of the Comptroller of the City of New York by regular mail. 56.1 ¶¶ 45-46; ECF No. 96-7 ("Notice of Claim"). GML § 50-e requires that service be effectuated either by certified mail or by personal delivery to the Office of the Comptroller. GML § 50-e(3)(a). In response to the deficient service, Defendants sent Plaintiff a notice that directed him to file a notice of claim "by a proper method of service within 10 days of receipt of this letter." Notice of Claim at 7; 56.1 ¶ 46; GML § 50-e(3)(d) (defective notice timely received may be cured if new notice is returned within ten days of notification that it was deficient). Plaintiff does not dispute that he did not

11

respond to the notice to cure letter. Instead, Plaintiff argues there is no proof he ever received it. Opp. at 3; *see also* 56.1 ¶ 46.

The Court cannot credit Plaintiff's argument. "It is well settled that proof that a letter was mailed creates a presumption that the letter reached its destination and was actually received by the person to whom it was addressed." *Orix Credit Alliance v. Phillips-Manhen, Inc.*, 1993 WL 183766, at *7 (S.D.N.Y. May 26, 1993); *Osele v. United States Attorney*, 190 Fed. Appx. 96, 97 (2d Cir. 2006) ("A properly addressed piece of mail placed in the care of the Postal service is presumed to have been delivered."); *cf. Duncan v. City of New York*, 2018 U.S. Dist. LEXIS 117126, at *10 (E.D.N.Y. June 19, 2018) (failure to comply with notice of claim requirements are strictly construed, "even where the proffered reason [for non-compliance] is that plaintiff never received the notice, though the City has mailed the demand."). Plaintiff otherwise concedes that he did not properly serve and did not respond to the notice of defective service. 56.1 ¶ 46. The Court cannot exempt Plaintiff from the notice of claim requirements under New York law. *See Bell v. Jendell*, 980 F. Supp. 2d 555, 559, (S.D.N.Y. 2013).

Even if this Court could overlook the issues relating to the notice of claim, Plaintiff's state law claims are time-barred. New York's General Municipal Law requires that claims against municipalities and their employees must be "commenced within one year and ninety days after the happening of the event upon which the claim is based." GML § 50-i(1)(c). "With the expiration of the [50-i(1)] period of limitations comes the bar to any claim." *Pierson v. City of N.Y.*, 56 N.Y.2d 950, 955, 439 N.E.2d 331, 333 (1982). Plaintiff commenced this action on April 26, 2019. *See* ECF No. 1; 56.1 ¶ 49. Plaintiff's (deficient) Notice of Claim states that his claim "arose on April 26, 2016 when he was arrested. Notice of Claim at 5. He was arraigned on the charges underlying the arrest on April 27, 2016. 56.1 ¶ 48; ECF No. 96-8. The criminal

charges were ultimately dismissed on October 19, 2017. 56.1 ¶ 49. Therefore, Plaintiff's claims had to be commenced, at the very latest, by January 17, 2019 (*i.e.*, one year and ninety days after his charges were dismissed). Plaintiff does not dispute that this action was not filed within the requisite time period applicable to his claims. *See* 56.1 ¶ 49 (Plaintiff "[a]gree[s]" that this action was filed "more than 1 year and 90 days after the criminal charge against the plaintiff was dismissed" and contends that he "commenced this action as soon as he could after being released from prison.").

In sum, the Plaintiff has not shown, and the record does not otherwise raise, a material dispute of fact that would preclude summary judgment on his state law claims. Defendants are therefore granted summary judgment on Plaintiff's state law claims.

### III. THERE ARE TRIABLE ISSUES OF FACT WITH RESPECT TO PLAINTIFF'S SECTION 1983 CLAIMS FOR MALICIOUS PROSECUTION, FIRST AMENDMENT RETALIATION, AND FALSE ARREST

#### A. *Plaintiffs' Malicious Prosecution Claim Survives Because the Underlying Prosecution Terminated in Plaintiff's Favor*

In its August 25 Opinion dismissing then-defendants Perez and Roche from the case, the Court determined that the Amended Complaint alleged a malicious prosecution claim against Officer Gomez only. *See* Opinion at 6 n.2. To prevail on a Section 1983 claim for malicious prosecution, Plaintiff must show "a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment." *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018) (internal quotation marks omitted) (alteration in original). Plaintiff must also show that "criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor." *Id.*

13

The underlying criminal prosecution against Plaintiff was dismissed on New York state speedy trial grounds pursuant to Section 30.30 of New York's Criminal Procedure Law. 56.1 ¶ 39; ECF No. 96-6 ("Criminal Court File"). Defendants contend that a "speedy trial dismissal does not constitute favorable termination for § 1983 purposes." Mem. at 7. That is a misstatement of the law.

The Second Circuit has held that "a speedy trial dismissal is generally a favorable termination for purposes of a malicious prosecution claim under Section 1983." *Kee v. City of New York*, 12 F.4th 150, 165 (2d Cir. 2021). Under *Kee*, a speedy trial dismissal creates a rebuttable presumption that a defendant must overcome by presenting evidence of a "'non-merits-based explanation for the failure to pursue the prosecution' of the plaintiff." *Id.* (quoting *Murphy v. Lynn*, 118 F.3d 938, 951 (2d Cir. 1997)). Here, Officer Gomez point to no evidence in the record to rebut the presumptive favorable termination of the underlying prosecution of Plaintiff.[3] The 56.1 statement contends that "[t]he criminal court files do not contain any information or documents indicating that [sic] plaintiff's innocence or that he was not guilty, but rather reflects that the charges were dismissed on procedural grounds." 56.1 ¶ 40. In support, Officer Gomez cites to the Criminal Court File [ECF No. 96-6] that contains the disposition of Plaintiff's underlying prosecution. *Id.* (citing Criminal Court File). That file simply states that the Government "concede[s] 30.30 – dismissed & sealed." Criminal Court File at 1.

---

[3] The Court notes that the Second Circuit's decision in *Kee* is relatively new. Prior to *Kee*, district courts in the Second Circuit disagreed on whether a speedy trial dismissal was a favorable termination for purposes of a Section 1983 claim. *Compare Minus v. City of New York*, 488 F. Supp. 3d 58, 66 (S.D.N.Y. 2020) (speedy trial dismissals not favorable terminations) *with Blount v. City of New York*, 2019 WL 1050994, at *5 (E.D.N.Y. Mar. 5, 2019) (speedy trial dismissals are favorable terminations). Defendant's motion for summary judgment was filed before the Second Circuit's decision in *Kee*. *See* ECF No. 95. However, *Kee* should not come as a surprise to the Defendants. Plaintiff directly cites *Kee* in his opposition as the principal authority rebutting Defendants' malicious prosecution arguments. Opp. at 2 (noting that *Kee* was decided after Defendants' opening brief). Defendants did not address *Kee* or otherwise respond to Plaintiff's malicious prosecution arguments on reply.

It is the Court's view that *conceding* a speedy trial issue is not the same as a non-merit-based explanation for the failure to pursue the Plaintiff's prosecution. Under *Kee*, Officer Gomez must rebut with evidence the presumption that the speedy trial dismissal was a favorable termination. Noting that the "files do not contain any information . . . indicating . . . plaintiff's innocence," 56.1 ¶ 40, is not sufficient. *See Kee*, 12 F.4th at 165-66 (because dismissal on speedy trial grounds is "generally (or presumptively) a favorable termination" it is error to dismiss where "there is no evidence in the record to support a non-merits-based reason for the dismissal."). Indeed, a statement that no evidence indicates innocence, and therefore the termination was not in Plaintiff's favor, would improperly shift the burden on summary judgment to the Plaintiff. *See id.* at 158. On the pending motion, the Court resolves all ambiguities and credits all factual inferences that could be rationally drawn in favor of the non-moving party. *See id.*; *Cifra v. General Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). Officer Gomez's motion for summary judgment on Plaintiff's Section 1983 claim for malicious prosecution is therefore denied.

**B.     *Plaintiff's False Arrest Claim Raises Material
        Issues of Fact that Preclude Summary Judgment***

Defendants concede that Plaintiff's false arrest claim as against Officer Gomez should proceed,[4] but seek summary judgment dismissing that claim against Detective Romero. Plaintiff states that Detective Romero was not the officer who arrested and handcuffed Plaintiff. *See* 56.1 ¶ 13 (Plaintiff "[a]gree[s] that Officer Gomez walked back over to Plaintiff and handcuffed him, but he did not explain why Plaintiff was being arrested at that time."). During his deposition

---

[4] *See* Mem. at 14 (arguing "the Court should not hesitate to dismiss this case with prejudice, save for the false arrest claim against Officer Gomez.").

15

Plaintiff affirmed that Officer "Gomez handcuffed me," and "placed me under arrest." ECF No. 96-3 ("Pl. Dep. Tr.") at 72:18-22.

A reasonable jury could find that Detective Romero was personally involved in Plaintiff's purportedly false arrest. As stated previously, the personal involvement requisite for an award of damages under §1983 may be shown by direct or indirect involvement. Direct participation is the "personal participation by one who has knowledge of the facts that rendered the conduct illegal," and indirect participation may be shown by establishing that the individual "order[ed] or help[ed] others to do the unlawful acts." *Provost*, 262 F.3d at 155.

In his 56.1 counterstatements, Plaintiff contends that after arresting the other individual on the scene, Detective Romero waited while "Officer Gomez picked the plastic bag [containing the drugs found at the scene] off the ground." 56.1 ¶ 12. When Plaintiff's companion said that the bag was his, "Officer Gomez looked at Officer Romero and said 'that's not his.'" 56.1 ¶ 12. Detective Romero then "simply nodded" in a way that Plaintiff believes was "an unspoken understanding," without saying what that understanding was. 56.1 ¶ 12.

In his opposition, Plaintiff notes that Detective Romero, "not [O]fficer Gomez, was listed as the 'arresting officer' on the arrest report filed in connection with Plaintiff's arrest." Opp. at 4. The Court believes the Plaintiff is referring to ECF No. 96-6 at 8, the criminal court complaint signed by Detective Romero that charges Plaintiff with criminal possession of a controlled substance. In that document, Detective Romero swore, under penalty of perjury, that he was "informed by [Officer] Gomez . . . that he observed [Plaintiff] with a large plastic bag containing smaller bags of [a controlled substance] in his hand and he observed him throw it to the ground." [ECF No. 96-6 at 8]. Plaintiff may also be referring to the arraignment form in his case, ECF No. 96-8. That form states that "Romero, Pedro" is the "arrest officer" for this case.

16

The undisputed facts show that Detective Romero was present at the scene during Plaintiff's arrest. Sufficient evidence raises a triable issue of fact as to the personal involvement of Detective Romero in that arrest. Indeed, if Detective Romero knew that Officer Gomez did not have probable cause to arrest Plaintiff, but tacitly approved the arrest and endorsed it later under the penalty of perjury, he may have been personally involved in the arrest for purposes of a Section 1983 claim. *See Arbuckle v. City of New York*, 2016 U.S. Dist. LEXIS 136857, at *37 (S.D.N.Y. Sept. 30, 2016) (while "[s]imply being present at the scene of an arrest does not suffice for personal involvement . . . conduct such as ordering that an arrest be made or filling out arrest paperwork can suffice to demonstrate direct participation.").

Perhaps realizing the deficiencies of his opening brief, Detective Romero argues for the first time on reply that he would otherwise be protected by the "fellow officer rule". Reply at 3-4. That rule provides that "an arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion, but may nonetheless act reasonably in relying on information received by other law enforcement officials." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2011). The Court will not consider arguments raised for the first time on reply. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."). The Court notes, however, that Detective Romero arguing for the first time that his involvement with the arrest was proper because he is shielded by the fellow officer rule underscores that a material dispute of fact exists as to whether he was personally involved in Plaintiff's arrest.

In short, a reasonable jury could find that Detective Romero either directly or indirectly was personally involved in Plaintiff's purportedly false arrest. Detective Romero therefore is not entitled to summary judgment on this claim.[5]

## C. Defendants Fail to Address Plaintiff's First Amendment Retaliation Claim

The August 25 Opinion construed Plaintiff's Amended Complaint to raise a First Amendment retaliation claim. August 25 Opinion at 4 ("Plaintiff alleges that the officers in the 33rd Police Precinct conspired to retaliate against him for protected actions (*i.e.* [a] previous lawsuit) and that the arrest, detention, excessive force, and prosecution were all such retaliatory efforts."). Defendants completely fail to address this claim, and do not move for summary judgment on it. As a result, the First Amendment retaliation claim, underpinned by the events giving rise to Plaintiff's purportedly false arrest, detention, and prosecution, survives as to Officer Gomez and Detective Romero.

## CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's federal claims under 42 U.S.C. § 1983 for excessive force, destruction of property, *Monell*, and free exercise claims, and on Plaintiff's "other pendent state law claims." Defendants' Motion for Summary Judgment is DENIED with respect to Plaintiff's federal malicious prosecution claim against Officer Gomez, his false arrest claim against Detective Romero, and Plaintiff's first amendment retaliation claim against Officer Gomez and

---

[5] Plaintiff argues for the first time in his opposition that Detective Romero is also "potentially liable . . . for failure to intervene." Opp. at 4. Plaintiff may not assert a new claim, devoid from his Amended Complaint, for the first time in an opposition to summary judgment. *See Bernadotte v. New York Hosp. Med. Ctr. of Queens*, 2016 U.S. Dist. LEXIS 25595, 2016 WL 792399, at *6 (E.D.N.Y. Feb. 26, 2016) ("[B]ecause Plaintiff did not assert a failure to accommodate claim in the SAC, she may not raise this new claim in opposing summary judgment.") (citing *McCoy v. Morningside at Home*, 601 F. App'x 57, 58 (2d Cir. 2015)).

Detective Romero. The false arrest claim against Officer Gomez is not the subject of Defendants' motion and will also proceed to trial.

The Parties are directed to appear for a pre-trial conference in this matter on April 20, 2022 at 10:00am. The conference will be held telephonically. To join the conference, dial 888-278-0296 and enter access code 5195844.

**SO ORDERED.**

**Date:   March 14, 2022**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**